***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Jones. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Jones with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff at all relevant times herein.
3. Defendant was duly self-insured at all relevant times herein.
4. Plaintiff's average weekly wage was $893.60, yielding a compensation rate of $560.00, which is the maximum compensation rate for 1999.
5. Plaintiff sustained a compensable injury by accident to her back and right leg on June 10, 1999.
6. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
7. Industrial Commission Forms and filings were stipulated into evidence as Stipulated Exhibit 2.
8. The issues before the undersigned are: (i) whether plaintiff has reached maximum medical improvement from her compensable injury by accident; (ii) what medical treatment, if any, is due plaintiff such as a possible lower back fusion surgery; (iii) whether O. Dell Curling, Jr., M.D., should be designated as plaintiff's treating physician; (iv) whether plaintiff's current condition is a result of pre-existing surgery; and (v) whether plaintiff is prohibited from recovering additional benefits on the underlying Seagraves decision whereby plaintiff was dismissed from her prior job which fell within her work restrictions at Willowbrook Healthcare?
 *********** EVIDENTIARY RULINGS
The objections raised in the depositions of O. Dell Curling, Jr., M.D., Dennis G. Egnatz, M.D., Robert Paul Harris, M.D., John Allen Wilson, Jr., M.D., Joseph Maurice McWhorter, M.D., and the video deposition of Donna Rae McMillan, are OVERRULED.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-one (41) years old and had received a high school diploma. Plaintiff completed a Licensed Practical Nurse Program at Forsyth Technical School and an Associate Degree in Nursing from Surry Community College. Plaintiff subsequently earned a Bachelor of Science in Nursing in 1992 from Winston-Salem State University.
2. Plaintiff's work history has predominately been in nursing. Plaintiff worked as a Licensed Practical Nurse at Forsyth Medical Hospital from 1981 to 1988. Plaintiff worked as a Staff Nurse at Hugh Chatham Hospital from 1988 through 1991. Plaintiff began her employment with defendant-employer January 1991 and continued until May 2000.
3. Plaintiff suffered an injury to her low back while working for defendant-employer in 1991. Plaintiff was lifting a patient when she felt an onset of minimal lower back and right leg pain. Plaintiff experienced no left leg pain at the time of this incident. There is no record that a workers' compensation claim was ever filed relating to this incident with the North Carolina Industrial Commission.
4. Plaintiff received non-operative treatment for her low back on July 23, 1998. Dr. J. M. McWhorter treated plaintiff and diagnosed her with a small-herniated disc at L4-5 on the right side and subsequently performed surgery on September 2, 1998, which included a lumbar hemilaminectomy at L4-5 on the right and diskectomy. On October 30, 1998, Dr. McWhorter released plaintiff to return to work without restriction. Plaintiff returned to her normal position Staff Nurse with defendant-employer with no restrictions in early November.
5. On February 17, 1999, plaintiff experienced pain while working for defendant-employer when attempting to catch a patient who was falling. Plaintiff experienced a sharp lower pain that radiated down her right leg to her ankle. Plaintiff received no medical treatment immediately after the incident and sustained no disability to her wage earning capacity. There is no record of a workers' compensation claim being filed as result of the February 17, 1999 incident.
6. Plaintiff took Ultram and Arthrotec after the incident in February 1999. These medications were left over from her back surgery in September 1998. Plaintiff experienced intermittent flare ups in her low back after February 1999 while lifting and moving patients during the course of her work duties. However, plaintiff's condition improved after the incident on February 17, 1999 and plaintiff had no residual problems while performing her normal duties while working for defendant-employer.
7. Plaintiff did not receive any treatment from Dr. McWhorter from October 30, 1998 until her injury on June 10, 1999. Plaintiff did not receive epidural steroid injections as treatment for her back prior to June 10, 1999.
8. On June 10, 1999, plaintiff suffered a compensable injury by accident when she was assisting a co-worker to lift an obese patient into bed. Plaintiff experienced immediate onset of lower back pain with right leg pain. Plaintiff experienced lower back pain with radiation to both of her hips, right buttock and right leg. Plaintiff was experiencing a stinging and burning sensation. Defendant-employer accepted this injury as a compensable injury.
9. Plaintiff was initially treated by her primary care physician and then was evaluated by defendant-employer's Health Clinic on June 15, 1999. The evaluation at the Employee Health Clinic was performed by Wayne VonSeggen, P.A. Plaintiff was taken out of work June 15, 1999 for a week and recommended bed rest.
10. Plaintiff followed up with Mr. VonSeggen and was written out of work until July 15, 1999. At that time, plaintiff was released to return to work on limited duty with restrictions of lifting no greater than thirty (30) pounds and no repetitive bending. Plaintiff was not able to return to work for defendant-employer with the restrictions until July 24, 1999. Defendant-employer paid plaintiff total disability compensation from June 15, 1999 through July 24, 1999.
11. The Employee Health Clinic referred plaintiff to John A. Wilson, M.D., a neurosurgeon with defendant-employer. Dr. Wilson evaluated plaintiff on July 22, 1999 at which time she reported sharp lower back pain radiating down the right leg and ankle along the right buttock and leg tingling. Dr. Wilson recommended an MRI. The MRI indicated a midline and right paramedian impression at L4-5 caused by a combination of disc material and epidural scar.
12. On August 16, 1999, Dr. Wilson indicated there was epidural scar tissue and no clear-cut disc herniation. Dr. Wilson recommended plaintiff continue with non-surgical treatment and if problems persisted, plaintiff should have a myelogram performed.
13. On August 20, 1999, plaintiff was seen by Dennis G. Egnatz, Occupational Health Systems, at the direction of defendant-employer. Dr. Egnatz became plaintiff's authorized treating physician and recommended physical therapy and treatment with anti-inflammatory medications. Dr. Egnatz continued plaintiff's work restrictions of no lifting of thirty-five (35) pounds and no consistent lifting over seven (7) pounds, avoid twisting, pulling or pushing with her back.
14. Plaintiff's problems in her lower back and right leg persisted after she began treatment with Dr. Egnatz. Dr. Egnatz referred plaintiff to Dr. McWhorter. Dr. McWhorter evaluated plaintiff on September 14, 1999 and recommended a lumbar myelogram which showed a recurrent herniated disc at L4-5. Dr. McWhorter indicated the trauma in 1999 most likely caused a recurrent herniation of the disc at L4-5. Plaintiff requested Dr. McWhorter to pursue a non-surgical treatment.
15. On November 2, 1999, plaintiff was evaluated for the Functional Restoration Program at defendant-employer. Plaintiff was not a candidate for the Functional Restoration Program but it was indicated she would benefit from regular physical therapy. Plaintiff was capable of work in sedentary-light physical demand classification with lifting abilities from floor to waist of ten (10) pounds.
16. On December 10, 1999, Dr. McWhorter recommended a series of epidural steroid injections by Richard Guidetti, M.D. Plaintiff received three (3) epidural steroid injections between December 10, 1999 and March 2, 2000. During this time, plaintiff returned to Occupational Health Systems and was seen by Paul J. Greene, M.D. Dr. Greene indicated plaintiff was a candidate for surgery and referred her to Dr. McWhorter for consideration. Dr. McWhorter saw plaintiff on March 2, 2000 and concluded she did not need surgery at that time.
17. Defendant-employer directed plaintiff to Dr. Egnatz at Occupational Health Systems. Dr. Egnatz evaluated plaintiff on April 7, 2000. Since plaintiff was not a surgical candidate, Dr. Egnatz placed her at maximum medical improvement with a five (5%) permanent partial disability to her back and permanent restrictions of sedentary work, no lifting over ten pounds, only occasional bending, twisting, squatting, kneeling and no ladder climbing for an eight (8) hour shift maximum. Dr. Egnatz felt vocational rehabilitation was appropriate at that time and plaintiff was referred again to Dr. Egnatz at Occupational Medicine Solutions. Plaintiff was assigned to vocational rehabilitation with Concentra Managed Care. Plaintiff had an evaluation on May 9, 2000. Dr. Egnatz saw plaintiff on May 17, 2000 and continued his prescribed treatment. Dr. Egnatz has remained plaintiff's treating physician since May 2000.
18. Plaintiff did not return to work in her pre-injury position with defendant-employer due to the restrictions given by Dr. Egnatz and she resumed receipt of temporary total disability compensation on May 1, 2000. Plaintiff received total disability compensation from May 1, 2000 until July 24, 2000. On July 21, 2000, plaintiff was offered and accepted the position of Director of Nursing at Willowbrook Healthcare Center in Yadkinville at the same of greater wages she had received prior to her injury.
19. Plaintiff's position as Director of Nursing started on July 24, 2000 and involved oversight of the nursing department, making sure the nursing schedule and the nursing care was in place, and making sure the facility was in compliance with state and federal regulations. Plaintiff worked from 11:00 p.m. to 7:00 a.m. so she would not have to push a cart down the hall. Plaintiff worked from forty-five to sixty hours a week as Director of Nursing. On many occasions, plaintiff would work an eight (8) hour shift and take work home to work on her computer.
20. Plaintiff continued to receive treatment from Dr. Egnatz. On April 11, 2001, Dr. Egnatz reevaluated plaintiff's permanent partial disability and provided a fifteen percent rating to her back. Dr. Egnatz indicated that plaintiff's anatomic findings, physical examinations, her young age and the significant expectation of future deterioration, made plaintiff a surgical candidate at a later date. Plaintiff continued to treat with Dr. Egnatz after April 11, 2001 and while she was working as Director of Nursing at Willowbrook.
25. On December 12, 2001, Dr. Egnatz indicated plaintiff had reached a point in her pain where she was considering surgery due to her extensive interference with work, personal pleasure, and family. Dr. Egnatz recommended a repeat MRI and a possible referral to a surgeon. Dr. Egnatz indicated the MRI suggested plaintiff may be a surgical candidate and referred plaintiff to Stephen Grubb, M.D. Plaintiff through her counsel requested a surgical consultation be given by Dr. Grubb. Defendant-employer denied this request.
26. Dr. Egnatz took plaintiff out of work again on April 3, 2002. Dr. Egnatz found plaintiff could not perform any work and wrote plaintiff out of work until reevaluation as to the status of her work injury. Plaintiff's total disability compensation was not reinstated by defendant-employer. On May 22, 2002, Dr. Egnatz indicated plaintiff be limited to sedentary work with a ten (10) pound lifting limit, occasionally bending, twisting, squatting, kneel and no climbing.
27. Plaintiff never returned to her position as Director of Nursing at Willowbrook. Plaintiff received a letter indicating that as of June 26, 2002 plaintiff had exhausted her twelve (12) weeks of medical leave. The letter indicated if she did not return to her position before July 8, 2002, Willowbrook would conclude that she was voluntarily resigning. Plaintiff was terminated from Willowbrook Nursing Center because she was unable to return to work on July 8, 2002.
28. O. Dell Curling, M.D., neurosurgeon performed an independent medical examination on July 30, 2002. Dr. Curling reviewed plaintiff's medical history and medical records. Dr. Curling determined while plaintiff did not suffer from a recurrent herniated disc after her compensable injury on June 10, 1999, she developed her current symptoms in 1999 secondary to a contusion of the nerve root in the area of the pre-existing foraminal narrowing and epidural scarring.
29. Dr. Curling also indicated plaintiff suffered from a non-compressive neurogenic pain syndrome as result of her injury by accident. Dr. Curling opined that plaintiff is at maximum medical improvement and would benefit from further treatment. Dr. Curling recommended surgical intervention including decompression and spinal fusion with fixation at L4-5 and L5-S1.
30. Plaintiff continues to treat with Dr. Egnatz. Plaintiff was written out of work by Dr. Egnatz until October 2, 2002. At that time, plaintiff requested Dr. Egnatz release her to attempt to return to work with restrictions, Dr. Egnatz restrictd plaintiff to sedentary-light duty work with maximum lifting of fifteen (15) pounds, occasionally alternating sitting and standing as needed, occasional bending, squatting, or kneeling, no twisting, no climbing and occasional use of stairs but no ladders.
31. Plaintiff received unemployment benefits in the amount of $480.00 for ten (10) weeks from October 14, 2002 through December 23, 2002 totaling $4,080.00.
32. Plaintiff attempted to return to work with restrictions on December 23, 2002 as Director of Nursing at Brookridge Retirement Community at the same or greater wages that she had earned with defendant-employer. While plaintiff was having difficulty being able to perform her work, plaintiff has continued to work in that position as of the day of the hearing before the Deputy Commissioner.
33. Dr. Egnatz indicated plaintiff's increased hours while working for Willowbrook did not cause any new damage to her back and only may have made plaintiff more aware of her symptoms and pain. Dr. Egnatz further indicated plaintiff's increased hours did not have bearing on the ultimate increase of her permanent partial disability rating from five percent to fifteen percent rating on April 11, 2001.
34. Dr. Egnatz has reviewed the medical report of Dr. Curling along with his surgical recommendations. Dr. Egnatz had not found plaintiff to be at maximum medical improvement. Plaintiff needed surgical intervention and the issue of maximum medical improvement would need to be addressed after plaintiff's surgery. Dr. Egnatz indicated to a reasonable degree of medical certainty plaintiff's present back condition was caused by her work related injury in 1999. Dr. Egnatz also determined plaintiff's injury in 1999 could have produced her particular disability in her back that requires fusion surgery.
35. Dr. Curling has indicated plaintiff had mechanical back pain and right L5 radiculopathy, secondary either to a contusion or stretch injury of the nerve. Dr. Curling further determined plaintiff's injury by accident directly resulted in the injury to the L5 root nerve. Dr. Curling further determined plaintiff's pain complaints were developed as result of June 9, 1999 injury. Dr. Curling stated plaintiff's injury by accident significantly contributed to her need for the recommended two level fusion surgery. Dr. Curling estimates plaintiff will be at maximum medical improvement approximately a year after the fusion surgery. Dr. Curling further determined the compensable injury by accident contributed to the progression of plaintiff's degenerative disease and her foraminal stenosis. Dr. Curling's causation opinions and determinations were based upon the history presented to him by plaintiff.
35. The competent evidence in the record establishes that plaintiff presented to Wake Forest University Baptist Medical Center and completed a Patient Information Sheet, which described plaintiff's symptoms and conditions. The Patient Information Sheet reveals that plaintiff's symptoms after the February 1999 incident were almost identical to the symptoms she contended arose from the June 10, 1999 incident. Both Dr. Curling and Dr. Egnatz testified, at their respective depositions, that if plaintiff's symptoms, prior to June 10, 1999, had been the same or similar to her condition following the June incident, then such information would cause them to change their causation opinions. The competent evidence in the record establishes that Drs. Curling and Egnatz were not privy to plaintiff's statements concerning her symptoms prior to June 10, 1999.
36. The greater weight of the evidence supports a finding that bars plaintiff from recovering additional benefits as result of her June 10, 1999 injury. Plaintiff's disability ended when she returned to Willowbrook and any disability after that relates back to her pre-existing injury.
37. Dr. Egnatz and Dr. Curling have provided reasonably necessary treatment for plaintiff.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment and as a direct result of a specific traumatic incident of the work assigned with defendant-employer on June 10, 1999. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable injury by accident, plaintiff has received total disability compensation at appropriate points and time concerning her injury by accident and she is not entitled to receive any further benefits. N.C. Gen. Stat. §97-29.
3. If further benefits become due or payable to plaintiff, defendant-employer is entitled to a credit for the unemployment benefits paid to plaintiff in the amount of $4,080.00 for the period of October 14, 2002 through December 23, 2002. N.C. Gen. Stat. § 97-42.
4. Defendant-employer shall pay for medical treatment prescribed by plaintiff's treating physicians, Dr. Egnatz and Dr. Curling that was required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19),97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall receive a credit for the unemployment which was paid to plaintiff in the amount of $4,080.00 if any further benefits become due or payable to plaintiff.
2. Defendant shall pay all medical expenses as prescribed by plaintiff's treating physicians, Dr. Egnatz and Dr. Curling, that arise out of her compensable injury by accident on June 10, 1999, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. Defendants shall pay the costs of this action.
This the ___ day of April, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER